UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| PATRICIA CORTEZ, | ) CASE NO. 1:16-cv-1092 |
|---|---|
| Plaintiff, | ) JUDGE JOHN R. ADAMS |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) THOMAS M. PARKER |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

## I.     Introduction

Plaintiff, Patricia Cortez ("Cortez"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3), and Local Rule 72.2(b).

Because the ALJ supported her decision with substantial evidence and applied the correct legal standards, I recommend that the final decision of the Commissioner be AFFIRMED.

## II.    Procedural History

Plaintiff previously filed for disability and disability insurance benefits in March 2006. (Tr. 73-78)  Plaintiff's first disability claim was denied initially and on reconsideration. (Tr. 73) On December 2, 2008, ALJ John Murdock determined that plaintiff had the residual functional capacity to perform a full range of medium work and that she could perform her past work as an assembly line worker and bus driver. (Tr. 73-78)  At that time, disorder of gastrointestinal system

was the only severe impairment supported by the record. (Tr. 75) ALJ Murdock recognized that plaintiff had undergone surgery for her gallbladder, but he determined that she should have been able to return to work within a year of her surgery. (Tr. 77) Plaintiff did not appeal the earlier denial of benefits. (Tr. 22)

Plaintiff applied for disability insurance benefits again in April 2013. (Tr. 177-183) Ms. Cortez alleged her disability began on November 27, 2008. (Tr. 177) Ms. Cortez's application was denied initially on June 21, 2013 (Tr.97) and after reconsideration on August 23, 2013. (Tr.105) On September 18, 2013, Ms. Cortez requested an administrative hearing. (Tr. 112)

Administrative Law Judge ("ALJ") Pamela E. Loesel conducted a hearing on February 26, 2015. (Tr. 34) ALJ Loesel issued a decision on April 8, 2015, finding that Ms. Cortez was not disabled. (Tr. 19-29) Ms. Cortez requested a review of the hearing decision. (Tr. 1) The Appeals Council denied review, rendering the ALJ's April 8, 2015 decision final. (Tr. 1-4)

On May 6, 2016, Ms. Cortez filed an appeal of the ALJ's final decision with this court.[1] Defendant answered and filed the transcript of the administrative proceedings on July 15, 2016.[2] Ms. Cortez filed a brief on the merits on August 29, 2016[3] and Defendant filed her brief on the merits on October 27, 2016,[4] making the matter ripe for this court's review.

### III. Evidence

#### A. Personal, Educational and Vocational Evidence

Ms. Cortez was born on June 30, 1954 and was 54 years old on her alleged onset date of November 27, 2008. (Tr. 79) She was 57 years old as of the date she was last insured,

---

[1] ECF Doc. No. 1
[2] ECF Doc. Nos. 10 & 11
[3] ECF Doc. No. 12
[4] ECF Doc. No. 15

2

September 30, 2011. (Tr. 24, 79) Plaintiff's past work included machinist, production line assembler, dietary aide and city bus driver. (Tr. 48-52) She stopped working in 2008. (Tr. 208)

### B. Medical Evidence

Because plaintiff primarily focuses on the contention that the ALJ mis-evaluated the severe condition of obesity and failed properly to consider the conditions of lower back pain, lower extremity paresthesia and incontinence, the undersigned will focus the discussion of the medical evidence on those conditions.

In 2008, plaintiff sought treatment from Lorain County Health & Dentistry ("LCHD"). These records were not part of her previous application for benefits but were obtained and submitted as part of this action. In July 2008, plaintiff presented to LCHD complaining of fatigue, insomnia and "chronic leaking." (Tr. 566) Dr. Rebecca Schroeder noted that plaintiff abused tobacco and had restless leg syndrome. (Tr. 566) Plaintiff's height was 4' 11" and she weighed 178 pounds. (Tr. 566) Dr. Schroeder prescribed Ambien to help plaintiff sleep. (Tr. 566)

Plaintiff returned to LCHD on October 24, 2008 complaining of lower back pain and symptoms of depression. (Tr. 567) Dr. Schroeder prescribed Ultram for plaintiff's back pain. (Tr. 567) Dr. Schroeder noted that plaintiff had poor judgment and insight based on plaintiff's request for female Viagra and not understanding why it wasn't available. (Tr. 567) Dr. Schroeder noted plaintiff's obesity but there is no note of plaintiff's incontinence at this appointment. (Tr. 567)

Plaintiff did not return to LCHD until April 2009. (Tr. 568-69) At this appointment, she reported bilateral hand and foot numbness and itching of her hands and feet. (Tr. 568) Plaintiff also complained of abdominal pain. (Tr. 568) Dr. Schroeder noted poor judgment and insight

3

again and that plaintiff had a tangential mood. (Tr. 568)  Plaintiff did not complain of urinary incontinence at this appointment. (Tr. 568-569)  Dr. Schroeder diagnosed bilateral upper and lower extremity paresthesia, prescribed Tylenol #3 with Codeine, and referred plaintiff to a neurologist. (Tr. 568-569)

Plaintiff returned to LCHD in August 2009. (Tr. 569)  At this appointment she reported that she had not pursued the neurologist referral because her paresthesia had resolved after she started taking Ultram.  (Tr. 569)  Plaintiff also reported that the prescription for Tylenol #3 had helped decrease her pain.  (Tr. 569)  Dr. Schroeder still recommended that plaintiff follow-up with a neurologist and she refilled her prescription for Ultram. (Tr. 569)  Plaintiff did not complain of urinary incontinence at this appointment. (Tr. 569)

Plaintiff returned to LCHD in March 2011.  Plaintiff reported back pain, body itching and fatigue, but no urinary incontinence. (Tr. 570)  Plaintiff believed that her medications were no longer effective. (Tr. 570)  Plaintiff weighed 182 pounds at this visit. (Tr. 570)

In April 2011, plaintiff weighed 184 pounds. (Tr. 571)  Office notes indicate that plaintiff smoked 4-6 cigarettes per day. (Tr. 571)  Plaintiff did not complain of any urinary incontinence at this visit. (Tr. 571)

Plaintiff presented at LCHD in June 2012 (after her date last insured). (Tr. 281)  At this visit she complained of urinary incontinence and reported that it had been ongoing for almost two years. (Tr. 281)  She reported that she had been wearing panty liners but wanted to be evaluated now because it was getting worse. (Tr. 281)  In August 2012, plaintiff reported that her incontinence was improved with medication. (Tr. 268)

### A. Opinion Evidence- State Agency Reviewing Physicians

In June 2013, Lynne Torello, M.D. opined that there was insufficient evidence in the case record to assess a residual physical capacity for the period ending September 30, 2011. (Tr. 81-82) Similarly, in August 2013, Linda Hall, M.D., concluded that the record evidence was insufficient to determine that plaintiff was disabled. (Tr. 88-90)

### D. Testimonial Evidence

#### 1. Testimony of Ms. Cortez

At the time of the hearing, Ms. Cortez lived with her husband and sixteen year old grandson. (Tr. 42) Ms. Cortez testified that she spent the better part of the day preparing a large evening meal for her family. (Tr. 43-44) She reported that she did the dusting and vacuuming at home. She also did the dishes. (Tr. 43) Her husband and grandson washed the laundry because it required descending steps to the basement. (Tr. 43) However, she folded the laundry and put it away after they brought it back up from the basement. (Tr. 43) Ms. Cortez did the grocery shopping but, for the past five years, her husband or grandson went with her to push the cart. (Tr. 45) Plaintiff testified that she usually went to bed around three o'clock in the morning and slept until 10:00 or 11:00 a.m. (Tr. 59)

Ms. Cortez was able to drive short distances on her own. (Tr. 45) However, she testified to one incident when she had forgotten her destination while she was driving. (Tr. 45-46) Her husband drove her to the administrative hearing. (Tr. 45)

Ms. Cortez did a small amount of work in 2010 as a census worker. (Tr. 47) However, she had not done any significant amount of work since before 2008. In 2007, she worked as a dietary aide at a hospital. (Tr. 48) She worked approximately 35 hours a week for seven months.

(Tr. 48-49)  She was on her feet pushing trays for approximately five hours at that job and then was able to sit for two hours doing paperwork. (Tr. 49)

From 2000 to 2003, plaintiff worked on an assembly line at Shiloh Automotive.  (Tr. 49-50)  At that job, plaintiff was required to lift items weighing approximately thirty pounds. (Tr. 49)  Her employment at the factory terminated when it relocated to China. (Tr. 50)

In 2005, plaintiff worked full time as a city bus driver for three months. (Tr. 50)  She was not required to lift heavy objects at that job. (Tr. 51)  However, she did assist disabled individuals on and off the bus by lowering a lift and securing their wheelchairs on the lift. (Tr. 51)

Plaintiff was asked to explain what her biggest physical limitation or problem was in the period from November 2008 to September 2011. (Tr. 52)  She responded that she had carpal tunnel syndrome.  (Tr. 52-53)  She reported that she had surgery on her left hand in 1996 but not on her right.  (Tr. 53)  She wears a brace at night on her right wrist at night. (Tr. 55)

Plaintiff also reported taking pain medication for her back. (Tr. 53-54)  She felt that the medication was no longer effective. (Tr. 54)  She testified that she was able to sit for about an hour before she needed to stand up and stretch her legs. (Tr. 56)  She also reported tingling and numbness in her feet. (Tr. 56)  Plaintiff also testified that she had problems with urinary incontinence during the relevant period.  (Tr. 57)  But, her testimony was unclear as to the severity of that problem during the relevant period. (Tr. 57)  Plaintiff reported having low energy levels, depression and troubles interacting with people.  (Tr. 58-60)

### 2. Vocational Expert's Testimony

A vocational expert ("VE"), Gene Burkhammer, testified at the hearing.  (Tr. 392-403) Mr. Burkhammer considered plaintiff's past work to include CNC machinist, production

assembly, dietary aide, and bus driver. (Tr. 64-65)  Mr. Burkhammer was first asked to consider a hypothetical individual the same age as plaintiff with the same education and past work experience who could occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; was able to stand and walk six hours of an eight-hour workday; was able to sit for six hours of an eight-hour workday; and was unlimited in her ability to push and pull other than the limitation stated for lifting and carrying. (Tr. 65)  Mr. Burkhammer testified that this hypothetical individual could perform all of plaintiff's past relevant work. (Tr. 65)  However, if this individual needed to take four or more extra breaks lasting five to ten minutes at a time beyond the standard scheduled breaks, there would not be any jobs available for the individual.  (Tr. 66)

Mr. Burkhammer was next asked to assume an individual the same age as plaintiff with the same education and past work experience who could occasionally lift and carry 20 pounds and could frequently lift and carry ten pounds; could stand and walk six hours in an eight-hour workday; could sit for six hours in an eight-hour workday; and was unlimited in her ability to push and pull, other than the limitation for lift and carry. (Tr. 66)   This hypothetical individual could not perform any of plaintiff's past relevant work. (Tr. 66)  Mr. Burkhammer explained that this individual would be able to perform the production assembly job as described by the DOT, but not as plaintiff testified her previous job had been performed. (Tr. 66)  The VE again opined that the requirement of four or more breaks beyond the normally provided breaks would preclude employment. (Tr. 67)

For the last hypothetical, the ALJ asked Mr. Burkhammer to consider a hypothetical person the same age as plaintiff, with the same education and past work experience, who could occasionally lift and carry ten pounds; could frequently lift and carry five pounds; who could stand and walk two hours in an eight-hour workday; could sit for six hours in an eight-hour

7

workday; and would be unlimited in her ability to push and pull, other than the limitations already noted for lifting and carrying. (Tr. 67) This hypothetical individual would not be able to perform any of plaintiff's past relevant work. (Tr. 67) Mr. Burkhammer testified that this individual would be limited to sedentary work. (Tr. 67) Ms. Cortez did not have any transferable job skills to sedentary level jobs. (Tr. 67)

## IV. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[5]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at

---

[5] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

8

least twelve months, and his impairment meets or equals a listed impairment,13 claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

**V.    The ALJ's Decision**

The ALJ issued a decision on April 8, 2015. A summary of her findings is as follows:

1. Ms. Cortez last met the insured status requirements of the Social Security Act through September 30, 2011. (Tr. 24)

2. Ms. Cortez did not engage in substantial gainful activity during the period from her alleged onset date of November 27, 2008 through September 30, 2011, the date she was last insured. (Tr. 24)

3. Ms. Cortez had the following severe impairments: disorder of the gastrointestinal system and obesity. (Tr. 25)

4. Ms. Cortez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 25)

5. Ms. Cortez had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c). (Tr. 26)

6. Through the date last insured, Ms. Cortez was capable of performing past relevant work as a CNC machine operator, production assembler, and bus driver. (Tr. 28)

Based on the foregoing, the ALJ determined that Ms. Cortez had not been under a disability from November 27, 2008 through September 30, 2011, the date last insured. (Tr. 29)

## VI. Parties' Arguments

Plaintiff argues that the ALJ misapplied Sixth Circuit precedent, *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997), which was adopted by Social Security Administration Acquiescence Ruling 98-4(6). As a result, plaintiff believes that the ALJ did not properly analyze new evidence related to plaintiff's obesity, lower extremity paresthesia, lower back pain, and incontinence. Plaintiff also argues that, because there was no medical opinion evidence related to the new evidence, the ALJ improperly interpreted the new medical evidence herself.

Plaintiff also argues that the ALJ's finding of residual functional capacity was not supported by substantial evidence. Plaintiff contends that she would not be able to perform work at the medium level of exertion as found by the ALJ. Her testimony contradicted the ALJ's findings that she would be able to meet the lifting requirements for medium exertion work. Plaintiff argues that the record supported a finding that she could do only sedentary work, that she had no transferable skills to sedentary work, and that she was an individual closely approaching advanced age. Thus, she argues that under Grid Rule 201.14, the ALJ should have determined that she was disabled.

Defendant argues that ALJ Loesel properly reviewed the objective medical evidence and found no basis to deviate from the prior ALJ's finding of RFC. As to obesity, the ALJ recognized obesity as a severe impairment. However, she determined that plaintiff had not produced any new evidence related to this condition or that there was any change in plaintiff's

overall condition as a result of her obesity. Defendant further contends that the ALJ properly considered plaintiff's complaints of back pain and found that there was no basis to deviate from the 2008 finding of RFC. Defendant argues that the ALJ properly considered plaintiff's complaints of urinary incontinence, particularly because the medical evidence did not show any complaints of incontinence during the adjudicative period at issue. Thus, defendant contends the ALJ's decision to exclude bathroom breaks from his finding of RFC was supported by the evidence. Defendant further contends that there was no medical opinion evidence supporting a more restrictive RFC. Defendant argues that the plaintiff has failed to show that the ALJ erred in refusing to deviate from the prior RFC determination and that the ALJ's decision should be affirmed.

## VII. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

In addition to considering whether substantial evidence supported the Commissioner's decision, the court must determine whether proper legal standards were applied. Reversal is mandatory when incorrect legal standards are applied.. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D.

Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B. Residual Functional Capacity and *Drummond* Analysis

Plaintiff argues that the ALJ erred in her application of *Drummond v. Comm'r,* 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) by not considering new and additional evidence. In *Drummond*, the Sixth Circuit held that prior decisions of the Commissioner which were not appealed are binding on the claimant and the Commissioner unless new evidence or changed circumstances require a different ruling. *Drummond*, 126 F.3d at 841. SSA Ruling 98-4(6), 1998 SSR LEXIS 5 therefore mandates:

> When adjudicating a subsequent disability claim with an adjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the adjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 SSR LEXIS 5, *5, 1998 WL 283902, at *3.

Plaintiff bears the burden to show circumstances have changed since the prior ALJ's decision "by presenting new and material evidence of deterioration." *Drogowski v. Comm'r of Soc. Sec.,* 2011 U.S. Dist. LEXIS 115925, 2011 WL 4502988, at *8 (E.D. Mich.) report and recommendation adopted, 2011 U.S. Dist. LEXIS 110609, 2011 WL 4502955 (E.D. Mich.). New evidence is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding that may have changed the outcome of the proceeding." *Coakley*

13

*v. Comm'r of Soc. Sec.,* 2014 U.S. Dist. LEXIS 37448, at *55 (S.D. Ohio) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 647 (6th Cir. 2013)). Evidence is considered material if there is a reasonable probability that the Commissioner would have reached a different decision if he or she had considered the new evidence. *Coakley*, 2014 U.S. Dist. LEXIS 37448, at *55 (citing *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988)).

Here, plaintiff argues that she presented new and additional evidence involving obesity, urinary and stress incontinence, low back pain, fatigue, restless leg syndrome, lower extremity paresthesia and depressive symptoms. However, this "new and additional evidence" is mostly plaintiff's own hearing testimony regarding her conditions or medical records noting plaintiff's isolated subjective complaints regarding one or another of those conditions.

The ALJ's decision addressed several of these alleged impairments and explained her finding that the evidence did not support a more restricted RFC than the one assigned by ALJ Murdock in the 2008 claim determination. For example, ALJ Loesel explicitly found that plaintiff had the severe impairment of obesity, a finding that ALJ Murdock did not make. However, when analyzing this impairment, the ALJ found no medical evidence in the record that showed plaintiff's obesity limited her ability to work. The ALJ noted, "[t]he claimant did not report limitations because of her weight or complain about an inability to perform certain activities because of her weight." (Tr. 27) The undersigned agrees with the ALJ. Although the new medical evidence submitted by plaintiff supported a finding of obesity as a severe impairment, the record contains no medical evidence documenting that this impairment limited her ability to work.

The ALJ also addressed plaintiff's complaints of urinary incontinence. (Tr. 27-8) ALJ Loesel considered plaintiff's testimony that she needed to use the restroom three times in an

14

hour. But the ALJ found that the medical evidence did not support this claim. The ALJ noted that there was no medical evidence of urinary incontinence during the adjudicatory period; plaintiff was not seeing a urologist; and did not report wearing protective undergarments. (Tr. 28) Thus, there was no objective evidence related to plaintiff's claim of urinary incontinence supporting a more restrictive RFC finding.

The ALJ considered plaintiff's claim of paresthesia in her lower extremities. (Tr. 27) The ALJ recognized that a medical record from April 7, 2009 supported a diagnosis of paresthesia in plaintiff's lower extremities. (Tr. 26-27) However, a later medical record from August 25, 2009 showed that plaintiff reported her paresthesia had resolved with the medication Ultram and that she had decided not to consult with a neurologist. (Tr. 27) At that appointment, plaintiff also submitted a college form to be completed by the physician, suggesting that plaintiff was attending or considering attending college. (Tr. 27)

Regarding plaintiff's low back pain, the ALJ noted that plaintiff reported only once that she was experiencing lower back pain, but her physical examination was normal and she was not found to have weakness in her extremities, decreased range of motion or an abnormal gait pattern. (Tr. 27) In fact, plaintiff complained of low back pain twice during the period at issue – once in October 2008 but then not again until March 2011. (Tr. 567, 570) These complaints were separated by several years and plaintiff has not pointed to any evidence that her lower back pain caused any functional restriction. There are also no medical opinions or objective diagnostic testing confirming the existence of any medically determinable impairment related to plaintiff's lower back pain.

The medical evidence related to plaintiff's claimed impairments is scant[6] and there is very little objective medical support for plaintiff's claimed impairments. Moreover, as noted by the ALJ, the record showed that plaintiff had performed seasonal work for the Census Bureau during the relevant period (Tr. 27); she was able to drive; watch television, listen to music and read; she helped her family with laundry and grocery shopping and made large nightly meals for them. (Tr. 26) In short, plaintiff's daily activities suggest that she was still capable of performing medium exertion work. She failed to present new and material evidence showing that circumstances had changed since the prior ALJ's decision. ALJ Loesel did not err in adopting the RFC finding of ALJ Murdock.

The undersigned finds that the ALJ's determination of Ms. Cortez's residual functional capacity was substantially supported by the medical and non-medical evidence. Plaintiff failed to present new and material evidence showing that any of her alleged impairments caused functional restrictions. Consequently, the ALJ did not err in adopting the prior ALJ's finding of RFC. In fact, her decision was consistent with the holding of *Drummond* and SSA Ruling 98-4(6). The undersigned recommends that the ALJ's finding of plaintiff's residual functional capacity be affirmed.

### C. Substantial Evidence Supports the ALJ's Finding that Plaintiff was Capable of Performing Medium Work

Plaintiff further argues that the ALJ erred in determining that plaintiff remained capable of performing medium-exertion work. In support of this argument, plaintiff points to her own testimony during the administrative hearing. She points out several different examples (from her own testimony) arguing that walking and standing were difficult: she could only stand for about

---

[6] Plaintiff admits this in her brief. ECF Doc. No. 12, Page ID# 760.

an hour; she has numbness and tingling when walking; and she could not go shopping alone.[7]
However, the ALJ was only required to include plaintiff's credible limitations in her determination of RFC. *Casey v. Sec'y of HHS,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ considered plaintiff's testimony and determined that the record did not support the physical limitations she described. (Tr. 27) It is for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). The ALJ properly based her determination of plaintiff's credibility on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 247 (6th Cir. 2007). Plaintiff's testimony during the hearing regarding the severity of her limitations was not substantiated by the medical evidence, and the ALJ was not required to accept her testimony at face value.

Plaintiff also argues that it was unreasonable for the ALJ to determine that plaintiff was capable of medium-exertion work because of her age. However, as the Commissioner points out, Social Security Ruling 96-8p provides that age is cannot be a factor in assessing a person's RFC and that " it is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms" due to an unrelated factors such as age. "In determining a person's maximum RFC for sustained activity, factors of age or body habitus must not be allowed to influence the assessment." *Id.* at fn5.

Because there was no opinion evidence in the record, plaintiff also contends that the ALJ interpreted the medical data herself. However, The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole. 42 U.S.C.A. §

---

[7] ECF Doc. 12, Page ID# 766.

17

423(d)(5)(B); 20 C.F.R. § 416.946(c). Pursuant to the regulations, the ALJ is charged with evaluating several factors in determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 633 (6th Cir. 2004); SSR 96-5p, 1996 SSR LEXIS 2, SSR 96-8p, 1996 SSR LEXIS 5. The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 416.927(e)(2). Here, the ALJ evaluated the evidence presented by plaintiff to determine whether it was new and supported a different finding of RFC than previously found by ALJ Murdock. Plaintiff admits that the medical evidence was limited. She mostly relies on her own testimony during the administrative hearing and her subjective complaints noted in the medical records to support her argument that the ALJ should have found that she was incapable of performing medium-exertion work. However, the undersigned finds that the ALJ properly evaluated the new evidence and concluded that there was insufficient evidence of a change of plaintiff's condition. Thus, the ALJ's properly decided that she was bound by the findings of the previous administrative law judge – that plaintiff could perform medium level work. Substantial evidence supported the ALJ's RFC determination.

## VIII. Recommendation

Because the ALJ's decision is supported by substantial evidence in the record and because the ALJ properly determined that the new evidence presented by plaintiff did not support a finding that plaintiff's condition had changed after the 2008 ALJ decision, the ALJ was bound by the prior ALJ finding that plaintiff was capable of performing medium level work. Further, the finding regarding plaintiff's residual functional capacity was substantially supported by the evidence in the record. I recommend that the final decision of the Commissioner be AFFIRMED.

Dated: May 9, 2017

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See *U.S. v. Walters*, **638 F.2d 947 (6th Cir. 1981). See also** *Thomas v. Arn,* **474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**